# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

SEAN MURPHY,                                     :
        Plaintiff,                       :
    v.                                           :    C.A. No. 14-203S
                              :
CENTRAL FALLS DETENTION                          :
FACILITY CORPORATION, et al.,                    :
        Defendants.                      :

## REPORT AND RECOMMENDATION

Patricia A. Sullivan, United States Magistrate Judge

       A self-described security expert and robbery mastermind, Plaintiff Sean Murphy is a prisoner awaiting trial in the Commonwealth of Massachusetts. In this case, he anchors his claims to retaliation by federal Marshals in Ohio and to a four-month stay in a Rhode Island detention facility during transport from the Southern District of Ohio, where he had been resentenced to thirteen years for robbery of a Brinks vault, to Massachusetts, where he faces state charges for a jewelry heist. Proceeding *pro se*, Murphy is suing two remaining groups of defendants[1] – first, Central Falls Detention Facility Corporation ("CFDFC"), the operator of Rhode Island's Donald W. Wyatt Detention Facility (the "Wyatt"), the Wyatt's Warden, Brian K. Murphy ("the Warden"), and unknown CFDFC employees; and, second, the United States Marshals Service ("USMS"), Ohio-based Deputy Marshal Andrew Shadwick and unknown Deputy Marshals (collectively "Defendants"). Murphy alleges that Deputy Marshal Shadwick, USMS and the unknown Deputy Marshals retaliated against him because of his exercise of his

---

[1] At the hearing on these motions, Murphy acquiesced to the arguments of Defendants AVCORR Management, LLC, and Anthony Ventetuolo, Jr., that all claims against them should be dismissed with prejudice because neither was providing services at the Rhode Island detention facility during the relevant time period. Accordingly, I recommended that their four dispositive motions (ECF Nos. 14, 17, 24, 26) be granted. My recommendation remains pending before the Court. See ECF No. 45. The AVCORR/Ventetuolo motions will not be addressed further in this report and recommendation.

right to seek a downward departure at his federal sentencing and that all Defendants caused him to be unjustifiably detained at the Wyatt for four months on his way from federal custody in Ohio back to state custody in Massachusetts.

Murphy's initial complaint triggered a flurry of motions to dismiss, in addition to an unopposed motion by the United States to substitute itself for Deputy Marshal Shadwick, USMS and the unknown Marshals in connection with claims brought under the Federal Tort Claims Act. Murphy added to the mix his motion to amend the complaint; it was opposed by all Defendants. All of these motions were referred to me, the motions to substitute and to amend for disposition and the motions to dismiss for report and recommendation. Based on the absence of objection, I granted the motion of the United States to substitute (ECF No. 33). Because the Defendants asserted only futility in opposition to Murphy's motion to amend (ECF No. 12), in the interest of efficiency, I granted it. Accordingly, in this report and recommendation, I focus on the viability of Murphy's Amended Complaint, considering not only the arguments in the motions to dismiss, but also the futility arguments made in opposition to the motion to amend.

With all of the dust settled, I find that Murphy's claims against Deputy Marshal Shadwick must be dismissed due to lack of personal jurisdiction, that his Federal Tort Claims Act claims fail because he did not present them for administrative review, and that his claims against unknown Marshals must be dismissed both because they fail to state a plausible Bivens claim pursuant to Twombly/Iqbal and because the Marshals have qualified immunity. I also find that all of Murphy's state law claims against CFDFC, the Warden and unknown CFDFC employees are insufficiently pled, while his claim of a constitutional deprivation based on unlawful detention founders both because of his status as a convicted felon and pretrial detainee, which legally justified his detention, and because of his failure plausibly to plead an injury

2

redressable in an action brought under 42 U.S.C. § 1983. Finally, I reject Murphy's claim that he has standing to sue for violation of the writ of habeas corpus ad prosequendum that effectuated his move from state jurisdiction to federal jurisdiction. Accordingly, I recommend that the motions to dismiss of the United States, Deputy Marshal Shadwick, USMS and unknown Marshals (ECF No. 34) and of CFDFC, the Warden and unknown CFDFC employees (ECF No. 3) be granted. The reasons follow.

## I.  FACTUAL BACKGROUND[2]

On January 18, 2009, thieves cut four holes through the roof of a Brink's secure warehouse in Columbus, Ohio, sealed the exterior door with epoxy to prevent discovery, destroyed or jammed the surveillance equipment, scattered objects (cigarette butts and used beverage cups) with DNA traces from residents of a local homeless shelter to deflect blame, and used a powerful thermal lance rod to cut into the vault, which then held $92 million in cash. United States v. Murphy, 518 F. App'x 396, 397-99 (6th Cir. 2013) ("Murphy Ohio Appeal I"). Just five days later, on January 23, 2009, Murphy was arrested and detained in Massachusetts in connection with an elaborate, but unrelated jewelry robbery; on May 1, 2009, he and others were

---

[2] Most of these facts are taken from Murphy's Amended Complaint (ECF No. 46). Because these are motions to dismiss, I take as true all well-pleaded factual allegations and afford Murphy the benefit of all reasonable inferences. Butler v. Balolia, 736 F.3d 609, 612 (1st Cir. 2013). In addition, as indicated in the text, I also rely on materials from judicial proceedings in other courts that may take judicial notice without converting these motions to dismiss to motions for summary judgment. Specifically, from Murphy's federal case in Ohio, United States v. Murphy, Case Number 2:11-CR-10(1) (S.D. Ohio), come two opinions of the Sixth Circuit, the public transcripts of Murphy's sentencing and resentencing, the public docket and public filings in the case. See, e.g., Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (appropriate for district court to consider "matters of public record, and other matters susceptible to judicial notice" without converting motion to dismiss into motion for summary judgment); Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand."); United States v. Gordon, 634 F.2d 639, 642 (1st Cir. 1980) (court may take judicial notice of indictment returned by grand jury in another federal district). From Murphy's pending criminal case in Massachusetts, Commonwealth v. Murphy, BRCR2009-00457 (Mass. Bristol Super. Ct.), comes the public docket, which is relied on by both Murphy and Defendant CFDFC. ECF Nos. 3-1, 9-2; see Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (docket sheets are public records of which court may take judicial notice); McCants v. Hennigan, No. 12-10738-LTS, 2013 WL 2153992, at *1 (D. Mass. May 16, 2013) (docket sheet susceptible of judicial notice); see Foley v. Wells Fargo Bank, N.A., No. 13-2527, 2014 WL 6090712, at *8 (1st Cir. Nov. 14, 2014) (documents whose authenticity is undisputed by both parties may be considered in connection with motion to dismiss).

indicted by the Commonwealth of Massachusetts for the jewelry heist. Commonwealth v. Murphy, BRCR2009-00457 (Mass. Bristol Super. Ct.) ("Murphy Mass. Docket"), ECF No. 3-1 at 3. The ensuing investigation led back to the Brinks robbery and, by the end of 2009, Murphy was cooperating with the Ohio investigation. Murphy Ohio Appeal I, at 399. After his final (but unsuccessful) proffer session in June 2010, a contraband search turned up a book written by Murphy entitled, "Master Thief: How to Be a Professional Burglar." Id. Located in the cell of an inmate at the Essex County Jail where Murphy had been housed in Massachusetts, it described methods for burglary that largely mirror the sophisticated methods used for the Brink's heist. Id.

Following more than a year of extensive investigation, Murphy was indicted on federal charges for the Brinks robbery in the Southern District of Ohio. United States v. Murphy, 2:11-cr-00010 (GCS) ("Murphy S.D. Ohio Docket"), ECF No. 4; see id. at ECF No. 181 at 7. He defended himself *pro se* at a jury trial in the Southern District of Ohio during October 2011; on October 26, 2011, the jury returned a guilty verdict on all four counts. Am. Compl. ¶ 10; Murphy S.D. Ohio Docket, ECF Nos. 127, 137. During the trial, Murphy claims that the United States Marshal for the Southern District of Ohio learned of his security expertise and asked him to identify areas of the courthouse that could be more secure; in response he prepared a report that he presented to Deputy Marshal Shadwick and the district judge. Am. Compl. ¶¶ 11-12. At the sentencing held on January 25, 2012, Murphy argued for downward departure based on his submission of the report (among other acts of cooperation), despite Deputy Marshal Shadwick's claim, communicated to the sentencing judge, that it had not been requested. Am. Compl. ¶ 13. Although the government refused to request a downward departure for cooperation, the court entertained Murphy's motions and partially granted the request for a downward departure based

on his claim of cooperation.  Am. Compl. ¶¶ 11-12; <u>Murphy S.D. Ohio Docket</u>, ECF No. 165 at

87-88.  Instead of the recommended sentence of 300 months, the court imposed a sentence of

five consecutive years for each count, for a total of 240 months or twenty years of incarceration.

<u>Murphy Ohio Appeal I</u>, at 400.

After sentencing in Ohio, Murphy apparently was returned to detention in Massachusetts

in connection with the pending state charges.[3]  Meanwhile, after the first sentencing hearing (the

Amended Complaint is vague as to timing), Murphy claims that Deputy Marshal Shadwick

"documented" that Murphy is a security risk based on the security report requested by the United

States Marshal.  Am. Compl. ¶ 14.  As a result, Murphy alleges, he was held in twenty-three

hour administrative segregation at a jail in Columbus, Ohio, and at "other jails."  <u>Id.</u>

Almost a year and a half later, on March 27, 2013, Murphy's appeal to the Sixth Circuit

Court of Appeals was finally decided.  Based on the government's concession that they were

insufficient, the court dismissed two of the four counts.  <u>Murphy Ohio Appeal I</u>, at 397.  Because

the sentences of incarceration on each count were interdependent, the twenty-year sentence was

vacated and the matter remanded to the district court for resentencing.  <u>Id.</u>  The balance of the

district court's decisions were affirmed.  <u>Id.</u> at 404.

On May 3, 2013, a writ of habeas corpus ad prosequendum (the "Writ")[4] was issued by

the Southern District of Ohio directing USMS to remove Murphy from Massachusetts and to

---

[3] The Amended Complaint is silent on Murphy's first trip back to Massachusetts.

[4] The writ of habeas corpus ad prosequendum is issued by a requesting jurisdiction seeking to have a prisoner in another jurisdiction produced to the requesting jurisdiction to stand trial.  <u>United States v. Lewis</u>, 732 F.3d 6, 15 (1st Cir. 2013).  The requesting jurisdiction does not take the prisoner into custody, because he is already in custody; rather, it is directed to the individual's custodian.  <u>Id.</u>  The custodian does not relinquish primary jurisdiction over the prisoner – instead, he is, in effect, "borrowed" by the requesting jurisdiction.  <u>Smart v. Warden</u>, No. 13-cv-375-SM, 2014 WL 2940871, at *3 (D.N.H. June 30, 2014).  Technically, the defendant remains in the jurisdiction of the sovereign from which he was borrowed, although his custodian has changed.  <u>Id.</u>

transport him back to Ohio for resentencing.[5]  Am. Compl. ¶ 15.  At the resentencing hearing

held on June 26, 2013, Judge Smith again granted Murphy's request for downward departure

based in part on his report to USMS on how to improve courthouse security, despite the

government's opposition.  Murphy S.D. Ohio Docket, ECF No. 181 at 18; see Am. Compl. ¶¶

13, 52.  Murphy also argued that he should be sentenced more leniently because he had been

labelled as a security risk based on his courthouse security report – he contended that the label

would follow him through his federal incarceration, had already caused him to be confined in

maximum security in an Ohio jail, and would continue to result in oppressive conditions of

confinement.  Murphy S.D. Ohio Docket, ECF No. 171 at 1-2.  Judge Smith rejected this

argument, ruling it unpersuasive because USMS "must take the necessary and appropriate steps

to ensure safety in this courthouse.  An inmate's observations regarding security, quote, unquote,

flaws should be and are taken very seriously by the Marshal Service."  Murphy S.D. Ohio

Docket, ECF No. 181 at 18.  Instead of the recommended 180 months, Murphy was sentenced to

156 months (thirteen years), with the proviso that he serve this sentence consecutively with the

anticipated sentence in Massachusetts.  Murphy S.D. Ohio Docket, ECF Nos. 178, 181 at 28.

Two weeks later, pursuant to the terms of the Writ, Murphy began the trip back to

Massachusetts.  Am. Compl. ¶¶ 16-19.  Almost two months later, and after stops in Michigan,

Oklahoma and New York, on August 23, 2013, he finally arrived at the Wyatt, a private "for-

profit" detention facility just over the border from Massachusetts in Central Falls, Rhode Island.

Am. Compl. ¶¶ 19-20; see Rodriguez v. Murphy, No. CA 12-510-M, 2013 WL 433159, at *1 n.1

(D.R.I. Feb. 1, 2013).  Murphy claims that he should immediately have been transported from

there to the United States District Court in Boston, Massachusetts, where Bristol County Sheriffs

would have taken him back to Bristol County Jail.  Am. Compl. ¶ 22.  Despite his complaints to

_____

[5] The Writ is not part of the record; I rely on the Amended Complaint for its content.

the Wyatt, the Bristol County Superior Court in Massachusetts had to issue a writ of habeas corpus to secure Murphy's return, which it did on November 8, 2013.  Am. Compl. ¶ 40; Murphy Mass. Docket, ECF No. 3-1 at 8.  The Wyatt did not deliver him to Boston until December 20, 2013.  Am. Compl. ¶ 23.

Murphy remains a Massachusetts pretrial detainee, incarcerated at the Bristol County Jail in Massachusetts, in connection with the state charges based on the jewelry robbery.  In the meantime, the Sixth Circuit Court of Appeals has affirmed Judge Smith's second sentence, rejecting all of Murphy's arguments, including his contention that the refusal of the United States to file a substantial assistance motion was in retaliation for his exercise of his right to have a jury trial.  United States v. Murphy, No. 13-3777, 2014 WL 6480382, at *9 & n.9 (6th Cir. Nov. 19, 2014) ("Murphy Ohio Appeal II").  Murphy's post-conviction challenge to the Ohio conviction and sentence pursuant to 28 U.S.C. § 2255 is pending.

## II.        MURPHY'S AMENDED COMPLAINT

Murphy's Amended Complaint is laid out in ten counts; Counts I to III, V to VIII and X allege injuries arising from his four-month detention at the Wyatt, while Counts VI and IX are based on Deputy Marshal Shadwick's alleged retaliation against him for seeking a downward departure for the courthouse security report.

Count VI charges "Harassment/Retaliation;" the preamble of the Amended Complaint specifies that this Count is brought pursuant to 42 U.S.C. § 1983.  It alleges that Deputy Marshal Shadwick, USMS and unknown Deputy Marshals retaliated against Murphy for requesting a downward departure of his sentence for providing the courthouse security evaluation report.  As a result, it alleges that Murphy was deprived of an unspecified "valuable benefit"[6] and of his

---

[6] Paragraph 14 of the Amended Complaint states that the security risk label caused Murphy to be held in twenty-three hour administrative segregation in Ohio and in other unspecified jails.  Am. Compl. ¶ 14.  Otherwise, the

constitutional right to obtain mitigation of his sentence through cooperation with federal authorities. Am. Compl. ¶¶ 67-68. Relatedly, Count IX is a claim against the same Defendants under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

The rest of the Amended Complaint is focused on the four months in 2013 that Murphy spent at the Wyatt. Murphy claims that this four-month sojourn violated the terms of the Writ, constituted an unlawful detention and false imprisonment and was the product of a policy of unlawfully detaining prisoners. Am. Compl. ¶¶ 24-25, 33, 44. Blaming both USMS and the Wyatt, he claims that the undue delay caused him to be denied his right to a speedy trial in Massachusetts and that several of his "Massachusetts civil cases suffered and/or were dismissed because [he] was not able to litigate them in a timely fashion." Am. Compl. ¶¶ 29, 39. Count I charges CFDFC with unfair and deceptive trade practices in violation of both Rhode Island and Massachusetts law while Count VII asserts breach of contract and Count V is based on negligence. Counts II and VIII charge all Defendants with false imprisonment and violation of the Writ, alleging that CFDFC and the Warden improperly and unjustifiably imprisoned Murphy and were in contempt of a court order (the Writ) as a result. Count III is based on R.I. Gen. Laws § 9-1-2, which imposes civil liability for injuries caused by the commission of a crime; it accuses all Defendants of kidnapping, unlawful restraint and false imprisonment. Count IV charges CFDFC and USMS with failing to train and supervise their employees not to unlawfully detain prisoners, invoking § 1983. Count X is based on civil conspiracy, alleging that all Defendants were jointly engaged in an unlawful enterprise to unjustifiably detain prisoners returning to Massachusetts.

---

Amended Complaint does not disclose what "valuable benefit" was lost as a result of the retaliation. See also Am. Compl. ¶¶ 41, 52 (Marshals conspired to deprive Murphy of "proper credit" for security report in retaliation for downward departure request).

# III.    ANALYSIS

## A.    Motion to Dismiss Claims Against Deputy Marshal Shadwick Based on Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2)

### 1.  Standard of Review

This Court may exercise personal jurisdiction over a nonresident defendant only when doing so "does not offend 'traditional notions of fair play and substantial justice.'" Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014); C.W. Downer & Co. v. Bioriginal Food & Science Corp., No. 14-1327, 2014 WL 5861962, at *1 (1st Cir. Nov. 12, 2014) (quoting Int'l Shoe Co. v. Washington, 326 US. 310, 316 (1945)).  In Fiore, the Supreme Court found that Nevada lacked personal jurisdiction in a Bivens action against a Drug Enforcement Administration agent who had searched and seized cash from plaintiffs in Georgia while they were in transit from Puerto Rico to Nevada.  Id. at 1119.  Fiore reemphasizes that personal jurisdiction rests not on the locus of plaintiff's injury, but rather on whether the defendant's conduct connects him to the forum in a meaningful way.  Id. at 1125; see Robinson v. Egnor, 699 F. Supp. 1207, 1212, 1214 (E.D. Va. 1988) (personal jurisdiction over United States Marshal comports with due process in light of his continuing contact with, and intentional conduct directed to, forum).  Fed. R. Civ. P. 12(b)(2) is the correct procedural device to bring on a challenge to the Court's exercise of personal jurisdiction.

Whether there is personal jurisdiction over an individual who is not "at home" in the jurisdiction, Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2853-54 (2011), depends on whether there is "specific" or suit-related in personam jurisdiction.  The first touchstone is Rhode Island's long-arm statute, R.I. Gen. Laws § 9-5-33, which is coextensive with the permissible reach of the due process clause.  Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009).  Accordingly, the court must determine whether the exercise

of specific personal jurisdiction satisfies due process, which requires that a nonresident defendant "purposefully avail[ed] himself of the privileges and protection of state law," such that he can "reasonably anticipate being haled into court there." Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 218 (1st Cir. 1989) (citing Hanson v. Denckla, 357 U.S. 235, 253 (1958)); Akers v. Watts, 740 F. Supp. 2d 83, 91 (D.D.C. 2010) (declining to exercise personal jurisdiction over employees of USMS based in another district). To make this determination, the court must examine (1) whether the claim arises out of or is related to the defendant's in-state activities ("relatedness"); (2) whether the defendant has purposefully availed himself of the benefits and protections of the forum state's laws ("purposeful availment"); and (3) whether the exercise of jurisdiction is reasonable under the circumstances (the "gestalt factors"). Bluetarp Fin., Inc. v. Matrix Constr. Co., 709 F.3d 72, 83 (1st Cir. 2013); Sawtelle v. Farrell, 70 F.3d 1381, 1388-89 (1st Cir. 1995). The plaintiff has the burden on relatedness and purposeful availment while the defendant must show that jurisdiction is unreasonable. See Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994).

### 2. Discussion

Deputy Marshal Shadwick is a nonresident defendant – he works in Ohio and argues that he is not subject to personal jurisdiction in the District of Rhode Island. Murphy's Amended Complaint concedes that Deputy Marshal Shadwick is based in Ohio and that all of his contact with Murphy occurred in Ohio. Am. Compl. ¶¶ 8, 12-14. He argues that Deputy Marshal Shadwick is subject to specific personal jurisdiction in Rhode Island based on his suit-related conduct in failing to ensure that Murphy made it back to Massachusetts, as a result of which he ended up in Rhode Island, and in labeling Murphy as a security risk, which label followed Murphy to Rhode Island. The issue is whether, using the prima facie mode of analysis and

taking these allegations as true, Murphy has alleged enough for specific personal jurisdiction. C.W. Downer, 2014 WL 5861962, at *3.

It is difficult to see how Murphy clears the relatedness prong, which requires him to show a demonstrable nexus between his claims and Deputy Marshal Shadwick's Rhode Island-based activities.  See Harlow, 432 F.3d at 61-62 (causation is central to relatedness in tort cases); Sawtelle, 70 F.3d at 1391 (when gravamen of claim is that plaintiff suffered in-forum effects of negligence committed elsewhere, relatedness "hangs . . . by a thread"); Ticketmaster-N.Y., Inc., 26 F.3d at 207 (causation is attenuated when intervening activities of third parties have significant impact on plaintiff's injury).  While this test is a flexible, relaxed standard, there is no allegation of any causal connection between what Deputy Marshal Shadwick did and what later happened to Murphy in Rhode Island.  It is far more plausible that the convoluted route that Murphy traveled from Ohio to Massachusetts (through Michigan, Oklahoma, New York and Rhode Island) was the result of the decisions of third parties with no link to anything done by Deputy Marshal Shadwick.  See Ticketmaster-N.Y., Inc., 26 F.3d at 207 (causation is attenuated when intervening activities of third parties impact plaintiff's injury).

Even more implausible is the purposeful availment prong – the Amended Complaint does not allege that Deputy Marshal Shadwick took any deliberate or purposeful steps directed towards Rhode Island.  See Harlow, 432 F.3d at 61-62 (quoting Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011)).  It alleges neither that Deputy Marshal Shadwick personally caused Murphy to be delayed in Rhode Island on his way to Massachusetts nor that Murphy's conditions of confinement in Rhode Island were adversely and materially affected by the notation that he is a security risk.  Finally, none of the gestalt factors suggests a different result. See Bluetarp Fin., Inc., 709 F.3d at 83.  To the contrary, it is the Southern District of Ohio that

not only is most convenient for Deputy Marshal Shadwick, but also is the forum that has the

greatest interest in proper resolution of the claim.  Even the usual factor of the plaintiff's

convenience does not tip toward Rhode Island – as a prisoner incarcerated in Massachusetts,

there is no suggestion that Rhode Island is any more convenient for Murphy than Ohio would be.

See id.

Based on the foregoing, I find that specific jurisdiction is lacking because the only

connection between Rhode Island and the claim against Deputy Marshal Shadwick is the

happenstance that Murphy was housed for four months in a facility located in Rhode Island so

that it became the locus of his alleged injury.  See Fiore, 134 S. Ct. at 1119, 1125 (no personal

jurisdiction over Georgia law enforcement official in Nevada where journey happened to end).

If personal jurisdiction exists in this case, every employee of USMS involved in any way in

transportation of a prisoner would be subject to suit in every state that prisoner moves through.

"Due process requires more."  Daniels Agrosciences, LLC v. Ball DPF, LLC, No. CA 13-268

ML, 2013 WL 5310208, at *14 (D.R.I. Sept. 20, 2013).  I recommend that Deputy Marshal

Shadwick's motion to dismiss for lack of personal jurisdiction be granted.

**B.     Motion to Dismiss Federal Tort Claims Act Claims Based on Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)**

**1.   Standard of Review**

"The district courts of the United States are 'courts of limited jurisdiction.  They possess

only that power authorized by Constitution and statute.'"  In re Olympic Mills Corp., 477 F.3d 1,

6 (1st Cir. 2007) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377

(1994)).  Accordingly, if this Court lacks subject matter jurisdiction over a claim, it should be

dismissed pursuant to Fed. R. Civ. P. 12(b)(1).  Murphy has the burden of alleging facts

sufficient to establish the court's subject matter jurisdiction.  See Aversa v. United States, 99

F.3d 1200, 1209 (1st Cir. 1996).  Matters outside the pleadings can be presented to and considered by the Court in ruling on a motion to dismiss for lack of subject matter jurisdiction. See Gonzales v. United States, 284 F.3d 281, 288 (1st Cir. 2002).  "District courts have wide discretion to determine which procedures to employ in resolving the jurisdictional issue."  Bank One, Texas, N.A. v. Montle, 964 F.2d 49, 51 (1st Cir. 1992).

      **2.  Discussion**

Apart from the "limited waiver" in the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), 2671, *et seq*., the sovereign immunity of the United States bars federal courts from exercising subject matter jurisdiction over claims against federal agencies and employees for injuries caused by negligent or wrongful acts or omissions.  Sanchez v. United States, 740 F.3d 47, 50 (1st Cir. 2014).  The FTCA waiver is conditioned on the invocation of administrative remedies by timely presentation of the claim in writing to the appropriate federal agency.  28 U.S.C. § 2401(b).  Murphy's Amended Complaint is studded with tort claims against USMS, Deputy Marshal Shadwick and the unknown Deputy Marshals; all of them are now asserted against the United States pursuant to the FTCA.  However, the Amended Complaint does not allege presentation to a federal agency and, during the hearing on these motions, Murphy conceded that he has not attempted to exhaust administrative remedies under the FTCA. Consistently, USMS has not received any administrative tort claim from Murphy.  See ECF No. 34-1 (USMS General Counsel Gerald M. Auerbach Declaration).  I find that this Court lacks subject matter jurisdiction over Murphy's FTCA claims based on his failure to present them to the appropriate federal agency.  Gonzalez, 284 F.3d at 288 (tort claim against United States "forever barred" unless timely presented in writing to appropriate federal agency).  Accordingly, except to the extent that they allege a constitutional deprivation for which Bivens affords a

remedy, all claims in Count II (false imprisonment), Count III (civil liability), Count IV (failure

to properly train/supervise), Count V (negligence), Count VI (harassment/retaliation) and Count

X (civil conspiracy) against the United States should be dismissed without prejudice.  See Saleh

v. Holder, 470 F. App'x 43, 44 (2d Cir. 2012) (court should dismiss FTCA claims without

prejudice when it lacks subject matter jurisdiction because plaintiff has not exhausted

administrative remedies); Lebron-Rios v. U.S. Marshal Serv., 341 F.3d 7, 14 (1st Cir. 2003)

(dismissal of FTCA claims without prejudice preferred).

### C. Motion to Dismiss Remaining Claims For Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)

#### 1. Standard of Review

Rule 12(b)(6) permits this Court to dismiss an action for failure to state a claim upon

which relief can be granted.  See Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009)

(citing Fed. R. Civ. P. 12(b)(6)).  To survive a motion to dismiss, a complaint must give the

defendant fair notice of what the claim is and the grounds upon which it rests and allege a

plausible entitlement to relief.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 559 (2007).  A

plaintiff must plead sufficient "factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009).  Further, "[f]actual allegations must be enough to raise a right to relief above

the speculative level."  Twombly, 550 U.S. at 555.

In evaluating a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded facts

alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor.

Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 53 (1st Cir. 2013).  "Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice."

Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 555 (court is "not bound to accept as true

a legal conclusion couched as a factual allegation").  Despite his *pro se* status, Murphy must

comply with these requirements – that is, he must plausibly allege that defendants are liable to

him under an actionable legal theory.  See Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009);

Hodge v. Murphy, 808 F. Supp. 2d 405, 408 (D.R.I. 2011) ("Although a court must review

pleadings of a *pro se* Plaintiff liberally, the court need not credit bald assertions or unverifiable

conclusions.") (citation omitted).

### 2.  Claims against USMS, Deputy Marshal Shadwick and Unknown Deputy Marshals

The crux of Murphy's claim against the federal actors is found in the Bivens Counts (VI

and IX)[7] against USMS, Deputy Marshal Shadwick and the unknown Deputy Marshals for

retaliation and harassment – as clarified by the oral argument, the Amended Complaint alleges

that they retaliated against him when he exercised his First Amendment right to petition the court

for a downward departure for cooperation based on the courthouse security report he wrote at

their request.  See Am. Compl. ¶¶ 13, 52.  According to the Amended Complaint, the retaliation

"deprived [him] of his constitutional right to obtain mitigation of his sentence . . ." and of

unspecified "valuable benefits."  Am. Compl. ¶¶ 67-68.  Murphy's brief adds labeling him as a

security risk and delaying his return to Massachusetts to the list of retaliatory actions.  ECF No.

40 at 4.

For starters, Murphy's Bivens claim against USMS should be dismissed.  Although

Bivens "allows constitutional claims against federal officials, in their individual capacities, for

actions taken under color of federal law," it does not permit suits against the United States, its

---

[7] The preamble to the Amended Complaint invoked § 1983 for Murphy's claim of harassment and retaliation. Section 1983 claims may be asserted only against a person acting under the color of state law and not against the United States or a federal agency.  Settles v. U.S. Parole Comm'n, 429 F.3d 1098, 1105-06, 1107 (D.C. Cir. 2005); Alves v. U.S. Postal Serv., Civil Action No. 12-12152-LTS, 2013 WL 2420939, *5 (D. Mass. May 31, 2013).  At the hearing, Murphy clarified that he meant to bring these claims under Bivens, and not under § 1983.  Accordingly, I recommend that the § 1983 claim arising under Count VI be dismissed for failure to state a claim.

agencies, or federal officers sued in their official capacities.  McCloskey v. Mueller, 446 F.3d 262, 271 (1st Cir. 2006); see also F.D.I.C. v. Meyer, 510 U.S. 471, 486 (1994); see generally Surprenant v. Rivas, 424 F.3d 5, 19 (1st Cir. 2005) (noting that "[a] suit against a public official in his official capacity is the same as a suit against the governmental entity itself").  What remains are the retaliation claims against unknown Deputy Marshals[8] (and against Deputy Marshal Shadwick if this Court does not adopt my recommendation regarding lack of personal jurisdiction) in their individual capacities.  These fail to state a claim because Murphy's charge that he is the victim of retaliation lacks the plausibility required by Twombly/Iqbal and because all of the employees of USMS enjoy qualified immunity with respect to it.

To assert a claim of retaliation, a prisoner must show that (1) he engaged in protected activity; (2) that the defendant took an adverse action against him; and (3) that there is a causal nexus between the former and the latter.  Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).  In Hannon, the court cautioned, "[b]ecause prisoner retaliation claims are 'easily fabricated [ ] and . . . pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration,' courts must insist that such claims are bound up in facts, not in the gossamer strands of speculation and surmise."  Id. (quoting Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003)).

With this backdrop, I begin with Murphy's allegation that the notation on his record that he is a security risk was not based on his self-claimed security expertise and interest in flaws in courthouse security, Am. Compl. ¶ 11 ("Murphy was a security expert"), but rather was based on

---

[8] It is difficult to posit how Murphy will be able to name employees of USMS over whom this Court will have personal jurisdiction in connection with the retaliation claim in light of the reality that all of the events giving rise to retaliation occurred in Ohio and only the effects were felt in Rhode Island.  Fiore, 134 S. Ct. at 1125 (effect on plaintiff in forum is not proper question).  There is no need to tangle with this complex question as the claim otherwise fails to state a claim.

retaliation against him for seeking a downward departure.  There can be little question that Murphy's motion for a downward departure based on his preparation of a security evaluation of the courthouse, supposedly at the request of the United States Marshal, constitutes a protected activity.  It remains implausible to infer that there is a causal link between that protected activity and Murphy's classification as a security risk.  Instead, these facts permit the inference of the obvious causal link – that the Marshals took appropriate action[9] in labelling Murphy as a security risk in light of his self-proclaimed security expertise and observations regarding security flaws at the courthouse.  See Iqbal, 556  U.S. at 678 (plausible claim must have factual content that allows court to draw reasonable inference that defendant is liable); Aybar v. Crispin-Reyes, 118 F.3d 10, 13 (1st Cir. 1997) (court need not credit conclusory allegations or indulge unreasonably attenuated inferences).  Murphy's Amended Complaint contains nothing beyond speculation to "nudge" this aspect of his claim "across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.

Murphy's other theories of retaliation are even more implausible.  His claim that he was "deprived . . . of his constitutional right to obtain mitigation of his sentence" as a result of the Deputy Marshal's conduct simply makes no sense.  Am. Compl. ¶ 68.  Far from being deprived of his right to seek a downward departure, the public record from Murphy's Ohio criminal case makes plain that he not only exercised his right, but was successful: both at sentencing and again at resentencing, Judge Smith ruled in his favor on his motion for downward departure based on cooperation, which included the preparation of the security evaluation of the courthouse.

---

[9] My conclusion that the retaliation claim based on the security risk label lacks plausibility is based on the reasonable inferences one may draw from the facts alleged in the Amended Complaint.  I observe that the same conclusion was made by the district court in the Southern District of Ohio at Murphy's resentencing: in response to the same argument, the court found that labeling Murphy as a security risk constituted the "necessary and appropriate steps to ensure safety in this courthouse" that USMS is required to take.  Murphy S.D. Ohio Docket, ECF No. 181 at 18.  Because I find the claim implausible, I have not considered the more complex question whether the court's consideration of argument at resentencing raises the bar of Heck v. Humphrey, 512 U.S. 477 (1994).

Murphy S.D. Ohio Docket, ECF No. 165 at 47, 87-88; ECF No. 181 at 9-10, 12, 20-21, 28.  In any event, to the extent that Murphy's retaliation claim focuses on the government's refusal to move for downward departure, he runs into the bar in Heck v. Humphrey, 512 U.S. 477 (1994): that issue was raised in his criminal appeal and rejected by the Sixth Circuit.  Murphy Ohio Appeal II, 2014 WL 6480382, at *9 (rejecting argument based on refusal of United States to file substantial assistance motion because Murphy failed to make "substantial threshold showing that the United States had an unconstitutional motive"); see Schneider v. Ryan, 101 F.3d 681, at *1 (2d Cir. 1996) (unpublished table decision) (complaint based on government's refusal to move for downward departure dismissed as Heck-barred).  Finally, Murphy's contention that the Ohio-based Deputy Marshals somehow manipulated Murphy's transportation to Massachusetts so that the Warden of the Wyatt forced him to stay there for four extra months founders on the absence of any plausible factual allegations that these individuals were personally involved in any way in his length of stay in Rhode Island.  See Twombly, 550 U.S. at 555 (plaintiff must offer more than label and conclusions or formulaic recitation of elements of cause of action).

In addition to being implausible, Murphy's retaliation claims are also doomed by the doctrine of qualified immunity.  Qualified immunity was formulated by the Supreme Court to allow government officials like these Deputy Marshals the necessary latitude to exercise their authority without the chilling effect and distraction of damages suits, as well as to ensure that only conduct that unquestionably violates the Constitution will subject an official to personal liability.  See Harlow, 457 U.S. at 814.  It protects them when performing discretionary functions from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional right of which a reasonable person would have known."  Id. at 818; see Brown v. Ponte, 842 F.2d 16, 18 (1st Cir. 1988) (discretionary authority includes actions of

governmental official undertaken pursuant to performance of duties and within scope of authority).  To determine whether qualified immunity protects a defendant, the court must engage in a two-step analysis: (1) whether the facts alleged make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the violation.  Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009).  Courts should address qualified immunity at the earliest possible stage.  Saucier v. Katz, 533 U.S. 194, 201 (2001).

Viewed through the lens most favorable to Murphy, the retaliation claim attacks the Ohio-based Deputy Marshals' conduct in classifying him as a security risk, in declining to ask the sentencing court to grant him a downward departure based on his preparation of the courthouse security evaluation and in initiating transport to Massachusetts.  The pleading fails to clear the first Maldonado prong in that the Amended Complaint does not explain either what constitutional right was adversely affected by these actions or how the conduct of the accused Deputy Marshals caused a constitutional deprivation.  Therefore, this Court cannot even consider the second prong, whether that right was clearly established at the time of the relevant events.  Such a deficiency is sufficient to require that all Bivens claims against the Deputy Marshals be dismissed.  Eldredge v. Town of Falmouth, 662 F.3d 100, 105 (1st Cir. 2011) (complaint dismissed because it failed to allege facts to support inference of intentional constitutional deprivation); Horta v. Sullivan, 4 F.3d 2, 13 (1st Cir. 1993) (claimant has burden to plead that, in light of preexisting law, unlawfulness of challenged action would have been apparent to defendant).  Put differently, all three challenged actions of the USMS employees constitute discretionary conduct that does not appear to violate any "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow, 457 U.S. at 818; see Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994) (act of marshal transporting prisoner

from one facility to another within ambit of discretionary authority). Accordingly, all three actions fall well inside the boundaries limned by the qualified immunity doctrine. See Eldredge, 662 F.3d at 105-06. These USMS employees are entitled to its protection.

### 3. Claims against CFDFC, the Warden and Unknown CFDFC Employees

#### i. Unfair and/or Deceptive Trade Practices against CFDFC

Count I alleges that CFDFC is a private business that took custody of Murphy (and others) and deceptively and unfairly held him for four months to earn a profit, thereby defrauding USMS. It is grounded on Rhode Island's Deceptive Trade Practices Act ("DTPA"), R.I. Gen. Laws §§ 6-13.1-1 *et seq.*, and Massachusetts's Chapter 93A ("Chapter 93A"), Mass. Gen. Laws ch. 93A § 11.

Apart from the fatal defect that the Amended Complaint itself specifies that USMS, not he, was the victim of the alleged fraud, Am. Compl. ¶ 56, Murphy's Rhode Island DTPA claim fails because he is not a consumer with standing to bring it, and because he fails to plead either "unfair or deceptive" activities or that he has suffered any "ascertainable loss of money or property, real or personal," as a result of such activities. Barreiro v. Jef Booth, P.C., C.A. No. 08-59ML, 2009 WL 982412, at *3 (D.R.I. Apr. 10, 2009) (plaintiff who has not suffered "ascertainable loss of money or property, real or personal," does not have a cause of action under DTPA); Magnum Defense, Inc. v. Harbour Grp. Ltd., 248 F. Supp. 2d 64, 71 (D.R.I. 2003) (plaintiff who is not "person who purchases or leases goods or services primarily for personal, family, or household purposes" lacks standing to bring DTPA claim); Schroeder v. Lotito, 577 F. Supp. 708, 717 (D.R.I. 1983) ("Since the plaintiffs are not within the grouping of persons permitted to prosecute private actions under the state statute, the claims asserted under R.I. Gen. Laws §§ 6-13.1-1 *et seq.* must be dismissed.").

Murphy's Chapter 93A claim suffers all the same defects and more. Chapter 93A § 9 affords standing only to a consumer who is injured by an act committed in the flow of commerce. Hershenow v. Enter. Rent-A-Car Co. of Boston, Inc., 840 N.E.2d 526, 528 (Mass. 2006) (causal connection between deceptive act and loss to consumer is essential predicate for recovery under Massachusetts ch. 93A § 9). Chapter 93A § 11 is available only to "[a]ny person who engages in the conduct of any trade or commerce." Murphy qualifies under neither section; to the contrary, he alleges that USMS was deceived and does not plead (nor could he) either that he was a consumer or that he was engaged in commerce. Also fatal to his Chapter 93A § 9 consumer claim is his failure to plead that he sent a 93A demand letter, which is an absolute prerequisite. See Mass. Gen. Laws ch. 93A § 9(3); Bates v. Giard, 866 N.E.2d 438, at *2 (Mass. App. Ct. 2007) (without demand letter, consumer's Chapter 93A claim dismissed). Dooming his Chapter 93A § 11 claim is his failure to plead that the "actions or transactions" occurred "primarily and substantially within" Massachusetts. Mass. Gen. Laws ch. 93A § 11; see Sterling Suffolk Racecourse Ltd. Pshp. v. Burrillville Racing Assoc., Inc., 802 F. Supp. 662, 672 (D.R.I. 1992) (Massachusetts must be locus of deception and where claimant was deceived and relied).

Count I should be dismissed in its entirety.

### ii.  Breach of Contract against CFDFC and the Warden

Count VII of the Amended Complaint charges CFDFC with breaching a contract with USMS by unlawfully detaining Murphy at the Wyatt. Murphy argues that he was the subject and an integral component of the contract; therefore, he should be permitted to pursue this novel theory. I reject the notion. A breach of contract claim may be brought by the parties, Barkan v. Dunkin' Donuts, Inc., 627 F.3d 34, 39 (1st Cir. 2010) (citing Petrarca v. Fid. & Cas. Ins. Co., 884 A.2d 406, 410 (R.I. 2005)), and in limited circumstances by an intended third-party

beneficiary. <u>Forcier v. Cardello</u>, 173 B.R. 973, 984-85 (D.R.I. 1994) (only "intended, and not

incidental, third party beneficiaries can maintain an action for damages resulting from a breach

of contract between two other contracting parties") (quoting <u>Davis v. New England Pest Control

Co.</u>, 576 A.2d 1240, 1242 (R.I. 1990)). Except for a narrow circumstance not applicable here (a

mortgagor challenging foreclosure), a stranger to the agreement has no standing to bring a claim.

<u>Mruk v. Mortg. Elec. Registration Sys., Inc.</u>, 82 A.3d 527, 536 (R.I. 2013). A "promissor's mere

awareness that someone other than the promisee may derive a benefit from the promissor's

performance under the contract is insufficient to cloak that third party with the mantle of

intended beneficiary," unless "the parties directly and unequivocally intend" the benefit. <u>Forcier</u>,

173 B.R. at 985-86 (quoting <u>R.I. Depositors Econ. Protection Corp. v. Ernst & Young</u>, C.A. No.

92-1120, slip op. at 4 (R.I. Super. Ct. Mar. 11, 1994)).

Murphy is neither a party nor an intended third-party beneficiary; I recommend that

these well-established principles result in dismissal of the breach of contract claim in Count VII.

### iii. Negligence against CFDFC, its Employees and the Warden

Count V alleges that Defendants were negligent in unlawfully detaining Murphy at the

Wyatt for four months without legal justification; this negligence claim is limited to the non-

federal Defendants because of the bar posed by the sovereign immunity of the United States.

Under Rhode Island law, negligence must rest on allegations of (1) a legally cognizable duty

owed by a defendant to the plaintiff; (2) breach of that duty; (3) proximate cause between the

conduct and the resulting injury; and (4) damages. <u>Cruz v. DaimlerChrysler Motors Corp.</u>, 66

A.3d 446, 451 (R.I. 2013). When, as here, the negligence complaint is wholly conclusory and

devoid of factual allegations in support of any of its elements, it should be dismissed. <u>Emrit v.

Universal Music Grp., Inc.</u>, C.A. No. 13-181-ML, 2013 WL 3730676, at *3 (D.R.I. July 12,

2013).  Murphy does not identify the legal duty he claims was owed to him, how or by whom it was breached or what damages flowed from the conduct.  What is plain is that Murphy is trying to recover based on the length of time it took for him to get back to the Bristol County Jail, where he is now being held; there is nothing in his Amended Complaint plausibly alleging that the delay was the product of negligence.  Accordingly, Count V should be dismissed.

### iv. False Imprisonment, Civil Liability and Civil Conspiracy against CFDFC, its Employees and the Warden Under State Law and § 1983

Murphy's false imprisonment claim in Count II charges Defendants with unlawfully detaining him at the Wyatt from August 24, 2013, until December 20, 2013.  In light of the FTCA bar and the implausibility of false imprisonment at the Wyatt as a claim against the Ohio-based Deputy Marshals, I deal now only with its viability as a claim against CFDFC and the Warden (and unknown CFDFC employees).  Related are the claims in Count III for civil liability under R.I. Gen. Laws § 9-1-2, which relies on false imprisonment (in addition to kidnapping and unlawful restraint), and in Count X for civil conspiracy, which relies on unlawful detention.[10]  A threshold inquiry applicable only to Count II is the legal theory on which it is premised, a matter that the Amended Complaint does not elucidate.  The parties appear to treat it as arising under Rhode Island state law, but I also consider whether it alleges a deprivation of constitutional dimensions suitable for consideration under § 1983.  See Lacedra v. Donald W. Wyatt Det. Facility, 334 F. Supp. 2d 114, 139, 140-41 (D.R.I. 2004) (CFDFC and individuals it employs act under color of state law for purposes of 42 U.S.C. § 1983).

---

[10] Neither "civil liability" nor "civil conspiracy" amounts to an independent cause of action in the absence of a predicate wrongful act.  A claim under R.I. Gen. Laws § 9-1-2 must be premised on factual allegations that state an underlying crime.  Marano v. RBS Citizens Fin. Grp., Inc., C.A. No. 12-639ML, 2012 WL 7170421, at *11 (D.R.I. Dec. 27, 2012).  Similarly, civil conspiracy is a means of establishing joint liability for predicate tortious conduct.  Read & Leady, Inc. v. Wash. Trust Co. of Westerly, 840 A.2d 1099, 1102 (R.I. 2004).

Under Rhode Island law, damages are recoverable for imprisonment that is "improper or unjustified." Dyson v. City of Pawtucket, 670 A.2d 233, 238 (R.I. 1996) (citing Moody v. McElroy, 513 A.2d 5, 7 (R.I. 1986)). To state a viable claim, the plaintiff must allege that the defendant intended to confine him, that he was conscious of the confinement, that he did not consent and that the confinement was not otherwise privileged or legally justified. Id. at 239. Murphy's claim founders on the final element – his status was that of convicted felon with a thirteen-year sentence on the Brinks robbery and of pretrial detainee on the Massachusetts burglary charge. Under no circumstance was his confinement without legal justification as alleged in Count II, nor did it constitute kidnapping, unlawful restraint or unlawful detention as alleged in Counts III and X. For the same reason, neither his detention *per se* nor his incarceration at the Wyatt instead of in the Bristol County Jail amounts to a constitutional deprivation under § 1983. See Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (prisoners generally have no liberty interest in placement while incarcerated); Montayne v. Haymes, 427 U.S. 236, 242 (1976) (prisoners have no right to be housed in particular institution). Relatedly, it is well settled that interstate prison transfer does not implicate a liberty interest. Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 225 (1976). And Murphy has no liberty interest in the speedy return to classification as a state detainee once the charges in the other jurisdiction are resolved. Fermin-Rodriguez v. Westchester Cnty. Jail Med. Pers., 191 F. Supp. 2d 358, 363-64 (S.D.N.Y. 2002) (no claim arises from eight-month delay in return to state custody pursuant to habeas corpus ad prosequendum especially where time in federal custody credited toward state sentence).

Focusing on Murphy's alleged injuries does not alter the outcome. His primary claim is that his four-month stay on the border of Massachusetts has impacted his speedy trial rights in

the Massachusetts case.  This claim is not only premature – Murphy's Massachusetts trial has not yet happened – but also fails to state a claim for civil damages.  Rather, the remedy for a speedy trial violation lies within the Massachusetts criminal case, "not . . . a separate private civil cause of action for pursuing sanctions."  Rockwell v. Adams, Civil Action No. 3:14-9190, 2014 WL 2779009, at *4 (S.D. W.Va. June 19, 2014) (prisoner's civil action based on speedy trial violation dismissed); see Moore v. DeYoung, 515 F.2d 437, 441 (3d Cir. 1975) (speedy trial violations addressed in court where criminal case pending).  If the Massachusetts case is dismissed due to a speedy trial violation, Murphy can seek credit towards his thirteen-year federal sentence for the four months spent at the Wyatt.  18 U.S.C. § 3585(b); 28 C.F.R. § 542.10; see Sweat v. Grondolsky, 898 F. Supp. 2d 347, 350 (D. Mass. 2012) (prisoner "borrowed" from state pursuant to writ of habeas corpus ad prosequendum remains in state custody, but that may alter if "borrowed" time is not credited to state sentence); Fermin-Rodriguez , 191 F. Supp. 2d at 364 & n.7 (credit towards state sentence given due to delay in returning prisoner to state custody).  Murphy cannot sue for a civil injury arising from his right to a speedy trial in Massachusetts caused by his lawful confinement in Rhode Island.  See Hinshaw v. Hardcastle, No. CIV S-07-1238 FCD, 2007 WL 2902920, at *1-2 (E.D. Cal. Oct. 3, 2007) (civil claim for speedy trial violation implicating validity of plaintiff's conviction is Heck-barred because conviction was not invalidated, expunged or reversed).

Murphy's other claimed injury from the delay at the Wyatt fails because it lacks plausibility.  He alleges that he was not able to litigate his civil state court cases from the Wyatt and that he suffered adverse rulings during his four months there.  With no allegation of a substantial difference as to the conditions of confinement at the Wyatt by contrast with the Bristol County Jail with respect to the ability of prisoners to make legal filings, these conclusory

allegations amount to no more than the sort of rank speculation that cannot withstand Fed. R. Civ. P. 12(b)(6) scrutiny.  See Muhammad v. U.S. Marshall Serv., No. 1:07-cv-00027, 2008 WL 2367302, at *6 (W.D. Pa. 2008) (two-year delay in return to state custody from federal custody pursuant to writ of habeas corpus ad prosequendum implicates liberty interest based on specific factual allegations of materially significant differences in medical and dental care).

A deeper analysis of these flawed claims would be superfluous.  Murphy's claim of false imprisonment and the state law claims that rely on false imprisonment (civil liability under R.I. Gen. Laws § 9-1-2 and civil conspiracy) all fail to state a claim; Counts II, III and X should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### v. Failure to Train and Supervise against CFDFC and the Warden Under § 1983

Murphy's failure to supervise claim arises under § 1983 and is asserted against CFDFC, the Warden and "the Marshals."  It is so skimpy as to leave the basis for the claim a complete mystery – Count IV contains only the conclusory charge that the unlawful detention of inmates at the Wyatt (including, presumably, Murphy, though Count IV does not say so) is caused by a failure to train and supervise committed by CFDFC, by the Warden and by unspecified "Marshals."  With Murphy's detention at the Wyatt legally justified, this amorphous allegation of failure to supervise collapses.  Flores v. Wall, No. CA 11-169 M, 2012 WL 4471101, at *9 (D.R.I. Aug. 31, 2012) (plaintiff must allege facts to show defendants "supervised, trained, or hired a subordinate with deliberate indifference towards the possibility that deficient performance of any of those tasks eventually contributed to any civil rights violation").  In the absence of any plausible allegations even suggesting deficient supervision and training, a viable constitutional deprivation or a causal link between them, Count IV should be dismissed.  Soto-Torres v. Fraticelli, 654 F.3d 153, 158 (1st Cir. 2011) (supervisor may not be held liable for

constitutional violation of subordinate without affirmative link between subordinate's behavior and supervisor's action or inaction such that supervisor's conduct led inexorably to violation).

### 4. Federal Question Damage Claims Based on Mental or Emotional Distress against All Defendants

While it is unclear whether Murphy alleges damages arising from mental or emotional injury from any of the Defendants pursuant to FTCA, § 1983 or <u>Bivens</u>, if he does, such claims should be dismissed because he does not allege that he suffered any physical injury. FTCA, pursuant to 28 U.S.C. § 1346(b)(2), bars an incarcerated felon from suing for "mental or emotional injury suffered while in custody without a prior showing of physical injury." The Prisoner Litigation Reform Act, pursuant to 42 U.S.C. § 1997e(e), bars any federal civil action brought by a prisoner for mental or emotional injury suffered in custody without a prior showing of physical injury. Murphy has presented no counter argument and his Amended Complaint has no claim of physical injury. To the extent that Murphy's damage claims include mental or emotional distress, I recommend that they be dismissed.

### 5. Claim that All Defendants Violated the Writ

As the affected prisoner, Murphy lacks standing "to attack the issuance and operation of the writ of habeas corpus ad prosequendum." <u>Derengowski v. U.S. Marshal</u>, 377 F.2d 223, 224 (8th Cir. 1967); <u>see also</u> <u>United States v. Pleau</u>, Cr. No. 10-184-1 S, 2011 WL 2605301, at *2 (D.R.I. June 30, 2011) (it is axiomatic that state prisoner is without standing to contest a federal court's issuance of a writ of habeas corpus ad prosequendum), <u>stay of writ vacated</u>, 680 F.3d 1 (1st Cir. 2012) (en banc). A writ of habeas corpus ad prosequendum is "a question of comity affecting the two governments" and "involves no personal right of the prisoner." <u>McDonald v. United States</u>, 403 F.2d 37, 38 (5th Cir. 1968) (per curiam); <u>see also</u> <u>United States v. Hill</u>, Criminal No. 07-371, 2011 WL 2173618, at *3 (W.D. Pa. June 2, 2011) ("exercise of jurisdiction

over a prisoner who has violated the law of more than one sovereignty and the priority of prosecution of the prisoner is solely a question of comity between the sovereignties which is not subject to attack by the prisoner") (quoting Bowman v. Wilson, 672 F.2d 1145, 1154 (3d Cir. 1982)).  "Thus, a defendant is without standing to pursue a claim regarding the priority of custody between two sovereigns."  Hill, 2011 WL 2173618, at *3; see Pleau, 680 F.3d at 4 (appeal of writ may proceed based on intervention by governor of state).  Only Massachusetts has the authority to challenge the operation of the Writ and require Murphy's return to its custody, as it ultimately did on November 8, 2013.  Murphy's newly minted claim based on an alleged violation of the Writ (asserted for the first time in his Amended Complaint) fails to state a claim and should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, I recommend that the Motion to Dismiss of Defendants Central Falls Detention Facility Corporation and Brian K. Murphy (ECF No. 3) and of Defendants United States and Supervisory Deputy United States Marshal Andrew Shadwick (ECF No. 34) be granted.  I do not recommend that Murphy be given leave to amend because he has already been afforded that opportunity.  Brown v. Rhode Island, 511 F. App'x 4, 5-7 (1st Cir. 2013) (per curiam).

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 16, 2014